UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

UNITED STATES OF AMERICA,

      Plaintiff,

      v.                                                  Case No. 24-CR-196

JACOB D. THEISEN,

      Defendant.

---

## DECISION ON DEFENDANT'S COMPETENCY TO PROCEED

---

Defendant Jacob D. Theisen is charged in an indictment with distribution and receipt of child pornography in violation of 18 U.S.C. § 2252A(a)(2)(A). The case is before the court on the defendant's motion for a determination of his competency to stand trial pursuant to 18 U.S.C. § 4241. Dkt. No. 17. On January 28, 2025, the court ordered a psychological examination of the defendant by licensed psychologist Dr. Deborah Collins to determine the defendant's mental competency. Dkt. No. 20. Dr. Collins filed her report with the court on May 20, 2025. Dkt. No. 23. On July 7, 2025, the court held a competency hearing at which Dr. Collins testified and concluded that Theisen suffers from amnesia resulting from traumatic brain injury sustained in a car accident and that his amnesia may adversely impact his ability to assist in his own defense. The parties have since supplemented the record with the report of the car accident in which Theisen was injured; the hospital records showing his diagnosis, care, and treatment; and the report of the investigation leading to the charges in the indictment. Now, based upon the evidence before the court and in consideration of the briefs filed by the parties, the court concludes that the defendant is competent to proceed. What follows is the court's findings of fact and conclusions of law.

# FACTS

On January 20, 2023, law enforcement received a Cyber Tip from the National Center for Missing and Exploited Children reporting that two child pornography images were uploaded via Bing Image. In response to the Cyber Tip, law enforcement issued an administrative subpoena for the Internet Protocol (IP) address that had uploaded the images. The IP address was associated with a residence shared by the defendant and his stepfather, and also associated with the email address JACOBDTHEISEN@GMAIL.COM. Dkt. No. 28-3 at 9.

On October 12, 2023, Antigo Police Officer Brian Bula sought and received a search warrant for the residence and the electronic devices at that address from the Circuit Court for Langlade County. That evening, officers and a Senior Digital Forensic Examiner from the Wisconsin Department of Justice, Division of Criminal Investigation, executed the search warrant at the residence. Both Theisen and his stepfather were present. The officers confirmed that Theisen and his stepfather jointly held the Spectrum internet account. They then spoke with each individually. *Id.* at 10.

After he was advised that he was not under arrest but also given his *Miranda* rights, Theisen agreed to talk with Officer Bula. In the conversation that followed, Theisen acknowledged that he had utilized 4Chan, an anonymous English-language image board website, to view an image of a "younger girl." He described the image as a nude girl "about 16" laying on fabric and on her stomach looking back at the camera. The defendant's description essentially matches the image described in count one of the indictment, which was an image forming the basis of the original Cyber Tip. Theisen advised Officer Bula that he viewed the image on the computer located in his bedroom. *Id.* at 11.

Based on his conversation with Theisen and his stepfather, Officer Bula concluded that Theisen was the person who had been receiving child pornography at the IP address associated with the residence. Officers thereupon took possession of Theisen's phone, computer, a separate hard drive, a computer from the basement that Theisen identified as his old computer, and an X-Box flash drive, and left the residence. Theisen was not taken into custody at that time. *Id.* at 12.

The following evening, October 13, 2023, Theisen was involved in a single-vehicle rollover accident on the Menominee Indian Reservation. Dkt. No. 28-1. Since that time, he claims to have severe impairment of his memory of events preceding the accident, including the events leading up to and including his interaction with law enforcement on October 12, 2023. Dkt. No. 23 at 3. Although the accident report states that Theisen was driving northbound on State Highway 47 when he began coughing and lost control of the vehicle, the source of that information is not indicated. The accident report also states that the lighting condition was dark, the road was dry, the weather was clear, and there were no known environmental factors. Dkt. No. 28-1 at 1.

In any event, the vehicle travelled off the right curve into the ditch and then rolled over several times through the woods. The vehicle came to a stop on its roof. The defendant was not wearing a seatbelt but remained trapped in the vehicle from the time of the accident until the next morning when the vehicle was discovered. *Id.* at 4. He was then transported to the emergency department of Aspirus Langlade Hospital in Antigo but then taken, via ambulance, to Aspirus Wausau where he remained for about a week. Dkt. No. 23 at 7. The injuries he sustained included a mild T12 vertebral body compression fracture, a concussion, and nondisplaced left anterior rib fracture four through seven. Dkt. No. 29-1 at 1. Because Theisen's mental status was out of proportion to the findings on the CT scan, MRI images of the brain were obtained. *Id.* at 4. Brain imaging yielded no evidence of "acute infarct intracranial hemorrhage or mass." Dkt. No. 23 at 6;

3

*see also* Dkt. No. 29-1 at 6 ("I spent quite a bit of time going over all these issues with him including my concerns over his slowly improving higher cortical function in the absence of traumatic findings on the MRI, which led to the suggestion for medical neurology consult . . . .").

Although Theisen had returned to work at a credit union full-time by August of 2024, he was placed on unpaid leave after the charges became publicly known. Dr. Collins states in her report that Theisen's parents confirm his reports of memory loss for events preceding the accident. They stated that their son required assistance relearning tasks as well as how to play videogames. They reported that his job responsibilities were "tailored to his limited capacity" when he returned to work full-time. His parents and a friend who worked with him at the credit union report that he seemed like a different person after the accident. He was more child-like, dependent, less outgoing, and constantly apologetic for his amnesia. His friend reported that when he returned to work, it was almost like he was learning a new job. Dkt. No. 23 at 3–5.

In the meantime, the electronic devices removed from Theisen's home on October 12, 2023, were later sent to the Division of Criminal Investigation's Appleton office for forensic examination. That examination revealed a total of 12,770 images on the hard drive from Theisen's computer. Of those images, 1,422 were determined to be Category I Child Sexual Abuse Material (CSAM), meaning sexual images of children obviously under the age of 18. An additional 11,348 images were listed as Category II CSAM, meaning they were children exploited with ages difficult to determine. Another hard drive contained 62,953 files and 1,016 Category I CSAM pictures along with 61,937 Category II pictures. One of the more disturbing images was found on Theisen's hard drive with the following file path: "Users\jacob\AppData\Local\Microsoft\Windows\Explore

4

\thumbcache_768.db." Based on the examination of his electronic devices and the investigation and interview conducted by law enforcement, the grand jury issued an indictment charging Theisen with distribution and receipt of child pornography.

## ANALYSIS

"Unquestionably, due process requires a defendant to be competent to stand trial." *United States v. Collins*, 949 F.2d 921, 924 (7th Cir. 1991). A defendant may not be brought to trial if he "is presently suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense . . . ." 18 U.S.C. § 4241(d). The test is "whether [the defendant] has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding—and whether he has a rational as well as factual understanding of the proceedings against him." *Dusky v. United States*, 362 U.S. 402, 402 (1960); *Leach v. Kolb*, 911 F.2d 1249, 1260 (7th Cir. 1990).

In this case, there is little question that Theisen is able to understand the nature and consequences of the proceedings against him. Dr. Collins stated both in her report and her testimony at the hearing that Theisen expressed an understanding as to the charges he was facing and the potential penalties. He also understood the role of the prosecutor, his own attorney, the judge, and the jury. Dkt. No. 23 at 11–12; Dkt. No. 27 at 6–7. Dr. Collins also testified that Theisen has "the capacity to interact, to engage in a reciprocal conversation with counsel." Dkt. No. 27 at 7. And while his capacity to understand the evidence against him is not perfect, it is "not entirely absent." *Id.* Dr. Collins noted in her report that, upon reviewing with him the limited information in the indictment, Theisen "speculated regarding how he may have been found in possession of such images," suggesting he has "the inclination and capacity to reply to the charges

5

from a legally self-serving perspective." Dkt. No. 23 at 11. Thus, it is only the second part of the test—his ability to assist in his defense—that is here at issue.

Theisen, through counsel, claims that his amnesia prevents him from assisting his attorney in presenting a defense. His attorney describes his current condition as follows:

> Mr. Theisen's overall clinical presentation paints a picture of a man whose capacity for independent reasoning, memory-based participation, and rational judgment is now profoundly compromised. His global retrograde amnesia erased decades of personal history. His executive dysfunction has impaired his independent reasoning and decision-making abilities. His communication deficits, especially in word-finding and comprehension, make it difficult for others to carry on meaningful conversations with him. His personality regression is profound – rather than being an independent adult, Mr. Theisen now collects stuffed animals and anime trading cards. His parents control his finances and have noted how he suffers heightened emotionality.

Dkt. No. 31 at 2–3. In light of this severe impairment, counsel argues that Theisen is unable to assist in his own defense and is thus not competent to stand trial. The government argues that even assuming Theisen suffers from a significant memory loss, he is nevertheless competent to stand trial.

The Seventh Circuit has long held that "amnesia is not a bar to prosecution of an otherwise competent defendant." *United States v. Stevens*, 461 F.2d 317, 320 (7th Cir. 1972). In *Stevens*, the alleged loss of memory was due to chronic drug abuse. In rejecting the defendant's argument that his amnesia was a bar to prosecution, the court relied in part on the Second Circuit's decision in *United States v. Sullivan*, 406 F.2d 180 (2d Cir. 1969). There, the court rejected the notion that "an amnesia for the events in question, if it were found that it actually existed, whether caused by drinking on the day in question or at a later date or dates . . . or by later trauma, must constitute a defense to criminal prosecution for acts committed in an apparently sober and competent interlude." *Id.* at 185–86. The court noted that "[t]here were other witnesses to the events who

6

could and did testify" and, at the time of trial, Sullivan himself "was capable of understanding the charges and assist in the conduct of the trial." *Id.* at 185.

The Seventh Circuit reaffirmed its holding in *Stevens* in *Leach v. Kolb*, stating that "[b]ecause amnesia . . . is not a proper basis for a finding that a defendant is incompetent to stand trial, we agree with the trial court that there was no evidence of mental disease or defect to support a finding that Leach was unable to consult with his lawyer and prevented him from having a rational, as well as factual, understanding of the proceedings against him." 911 F.2d 1249, 1260–61 (7th Cir. 1990). More recently, in *United States v. Andrews*, the court elaborated on the conditions under which amnesia would render a defendant incompetent to stand trial. 469 F.3d 1113 (7th Cir. 2006). The court listed several factors that should guide a court in applying the competency standard to an amnesiac defendant:

    (1) Whether the defendant has any ability to participate in his defense;

    (2) Whether the amnesia is temporary or permanent;

    (3) Whether the crime and the defendant's whereabouts at the time of the crime can be reconstructed without the defendant's testimony;

    (4) Whether access to government files would aid in preparing the defense;

    (5) The strength of the government's case against the defendant.

*Id.* at 1119. The court cautioned, however, that these factors "are not intended to be exhaustive or applied in a rote fashion." *Id.* The court noted that "the trial judge 'is in the best position to make a determination between allowing amnesia to become an unjustified haven for a defendant and, on the other hand, requiring an incompetent person to stand trial.'" *Id.* (quoting *United States v. Swanson*, 572 F.2d 523, 526 (5th Cir. 1978)). "Accordingly," the court concluded, "decisions regarding the application of the above factors, and the weight due each factor, is left to the sound discretion of the district court." *Id.*

7

Upon considering these factors in light of the evidence in this case, the court concludes that Theisen is competent to stand trial. Even assuming his memory loss is real, he does have some ability to participate in his defense. He understands the proceedings and can evaluate the strength of the evidence against him with the assistance of counsel. In short, his condition is not as stark as his attorney contends. According to Dr. Collins, his intelligence falls "squarely in the average range." Dkt. No. 27 at 19; Dkt. No. 23 at 6–7. And on tests measuring his capacity for new learning and retention of information, his performance fell within normal limits to superior. Dkt. No. 23 at 6. When asked whether Theisen's amnesia is permanent or temporary, Dr. Collins replied, "I cannot say." Dkt. No. 27 at 14.

As for whether the crime and the defendant's whereabouts at the time of the crime can be reconstructed without the defendant's testimony, the government notes that "child pornography crimes involving the use of electronic devices and the internet are perfectly capable of being reconstructed entirely independent of any testimony from the defendant." Dkt. No. 30 at 6. Attorneys in such cases "routinely rely on timestamps, file creation dates, internet provider transmission logs, cookies, modification dates, and a long list of metadata associated with images and videos to either inculpate or exculpate a defendant's involvement in a particular crime." *Id.* Indeed, because defendants typically do not recall times and dates of each download of what can be thousands of images and videos, amnesia concerning such details in this case leaves the defendant in the same position as most defendants facing such charges. Work and travel records, as well as family members and friends can assist in identifying his activities during the times in question to the extent that alibi becomes a defense. *See Andrews*, 469 F.3d at 1120 ("Andrews could have asked his family members or friends where he had been or with whom during the period in question.").

Access to the government's files will also aid in preparing a defense, to the extent one may exist. Pursuant to the government's "open file policy," Theisen will have access to the investigative reports and logs of the evidence against him. He and his attorney can hire an expert to review the forensic evaluations upon which the government's case rests and conduct his own forensic analysis of the same devices. Here, again, Theisen stands in essentially the same position as any other non-amnesiac defendant who faces such charges. To the extent that third parties could have had access to his electronic devices, the fact that he apparently lived with his mother and stepfather during the relevant time period both limits such access and provides a route for identifying those who might have been in a position to access his devices. The sheer amount of CSAM found on the devices rules out the kind of random third-party use counsel for Theisen suggests might have occurred.

Finally, the government's case against the defendant appears to be strong. Given the number and nature of the depictions and images found on his devices, the search terms he apparently used, the file path of the more disturbing depiction, and his post-*Miranda* admissions to Officer Bula, this is not the kind of case in which a claimed lack of recall, whether real or not, would likely result in a miscarriage of justice.

In sum, the court finds that Theisen understands the nature and consequences of the proceedings against him and is able to assist properly in his defense. He is therefore competent to stand trial. The clerk is directed to set this matter on the court's calendar for a telephone conference to address further scheduling.

**SO ORDERED** at Green Bay, Wisconsin this 3rd day of September, 2025.

William C. Griesbach
United States District Judge